UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ALVIN WHITESIDE,<br><br>Defendant. | CASE NO. 2:24-cr-00186-JHC-6<br><br>ORDER |

## I

## Introduction

This matter comes before the Court on Defendant Alvin Whiteside's Motion to Suppress. Dkt. # 352. Defendant seeks to suppress the evidence seized from a vehicle on or about July 9, 2024. *See id*. The Court has reviewed the materials filed in support of and in opposition to the motion, the rest of the case file, and the governing law.[1] Being fully advised, the Court DENIES the motion. Dkt. # 352.

[1] After further consideration of the motion, the Court decided an evidentiary hearing was not necessary and apologizes to parties and counsel for any inconvenience.

## II

## BACKGROUND

On or about July 9, 2024, investigators with Homeland Security Investigations and the Seattle Police Department were monitoring the wire and electronic communications of co-Defendant, Muhmad Ceesay. Dkt. # 352-1 at 3. Special Agent Patrick Ryan led the investigation. *Id.* at 2; Dkt. # 367-1 at 3. That afternoon, officers intercepted multiple calls between Ceesay and co-Defendant, Jaquan Means, discussing several narcotics transactions. Dkt. # 352-1 at 3; Dkt. # 367-1 at 4. During one of these calls, it became apparent that a third party would be the buyer. Dkt. # 352-1 at 3.

At approximately 5:35 p.m., Means texted Ceesay an address. Dkt. # 352-1 at 3. Agent Ryan then dispatched officers to the location. *Id.* In another intercepted call at 6:04 p.m., Means stated that the buyer would be in either an Escalade or another Cadillac. *Id.*; Dkt. # 367-1 at 5. A few minutes later, in another call, Means confirmed the buyer was in a Cadillac. *Id.* In the same call, Ceesay confirmed that he saw the buyer and was about to enter the buyer's vehicle. *Id.*

At approximately 6:16 p.m. near the previously texted address, the on-scene officers observed Ceesay with a black bag exit his car and approach a Cadillac. Dkt. # 367-1 at 5-6. An officer then observed him "enter[] the front seat of the Cadillac." *Id.*; Dkt. # 352-1 at 3-4. Ceesay had his phone up to his ear as he approached and entered the Cadillac. Dkt. # 367-2 at 3-5. Upon entering the Cadillac (and while still on the phone with Means), Ceesay said that he had 6,000 pills and the price was $3,600. Dkt. # 367-1 at 6; Dkt. # 352-1 at 3-4. Ceesay left the vehicle shortly after without the black bag. *Id.*; Dkt. # 367-1 at 6; *see also* Dkt. # 367-2 at 6-13. Soon after leaving the Cadillac, at approximately 6:18 p.m., Ceesay called Means and confirmed that the transaction had gone smoothly. Dkt. # 367-1 at 6; Dkt. # 352-1 at 4.

Soon after, officers determined that the Cadillac was registered to Defendant's spouse. *Id.*; Dkt. # 367-1 at 6; *see also* Dkt. # 367-1 at 13-15. Officers ran Defendant's criminal history and continued to monitor the Cadillac. Dkt. # 367-1 at 6-7; *see also* Dkt. # 367-1 at 13-15. At approximately 6:25 p.m., the on-scene officers observed a gold Honda arrive and park behind an RV, which the Cadillac was parked in front of. Dkt. # 367-1 at 7. The officers then observed a woman walk out of the Honda and "enter the front passenger's seat of the Cadillac." *Id.*

At approximately 6:49 p.m., at Agent Ryan's instruction, officers approached the vehicle and contacted Defendant. Dkt. # 367-1 at 7; Dkt. # 352-1 at 4. Officers removed Defendant from the vehicle and detained him. Dkt. # 367-1 at 6.

Officers then conducted a search of the vehicle. Dkt. # 367-1 at 7-8; Dkt. # 352-1 at 4-5. Officers found a small black leather bag on the front passenger's floorboard, which contained distribution amounts of several suspected controlled substances. *Id.* They then entered the back of the vehicle, removed the back bench seat and found additional narcotics and a handgun. *Id.*; Dkt. # 367-1 at 7-8. Following the search, Defendant was arrested on state drug trafficking charges. *Id.*; Dkt. # 352-1 at 4-5.

On October 16, 2024, a grand jury returned an indictment charging Defendant with one count of Conspiracy to Distribute Controlled Substances in violation to 18 U.S.C. §§ 841(b)(1)(A), 841 (a)(1), 841 (b)(1)(C) and 846; one count of Possession with Intent to Distribute in violation of 18 U.S.C. § 841(a)(1) and (b)(1)(A); and one count of Carrying a Firearm During and in Relation to a Rug Trafficking Crime in violation of 18 U.S.C. § 924 (c)(1)(A)(i). *See* Dkt. # 1 at 1-2, 5. Defendant now seeks to suppress the evidence seized from the Cadillac on July 9, 2024. *See* Dkt. # 352.

## III

## DISCUSSION

The Fourth Amendment protects the right to be free from unreasonable searches or seizures. U.S. Const. Amend. IV. The "touchstone of the Fourth Amendment is reasonableness. The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable." *Florida v. Jimeno,* 500 U.S. 248, 250 (1991) (citations omitted). Thus, where, as here, the defendant moves to suppress evidence obtained during a search, the record must show the search was reasonable. *United States v. Hawkins*, 249 F.3d 867, 872 (9th Cir. 2001).

Searches conducted without a warrant are "*per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions." *Hawkins*, 249 F.3d at 872 (quoting *Minnesota v. Dickerson,* 508 U.S. 366, 372 (1993)). "The government bears the burden of proving that a warrantless search or seizure falls within an exception to the warrant requirement." *United States v. Job*, 871 F.3d 852, 860 (9th Cir. 2017) (citing *United States v. Scott*, 705 F.3d 410, 416 (9th Cir. 2012)).

Here, the search was conducted without a warrant and was thus per se unreasonable under the Fourth Amendment. *See generally* Dkt. # 352-1. But the Government asserts (1) the automobile exception articulated in *California v. Acevedo*, 500 U.S. 565, 579-80 (1991), and *United States v. Ross*, 456 U.S. 798, 825 (1982); and (2) the search incident to arrest exception under *Arizona v. Gant*, 556 U.S. 332, 351 (2009). Dkt. # 367 at 2. The Government also says the collective knowledge doctrine applies so that the knowledge of any one officer is presumed to be shared by all. Dkt. # 367 at 8-9.

A. Collective Knowledge Doctrine

Defendant says that the officers on the scene lacked sufficient probable cause to search the vehicle.[2] *See* Dkt. # 352 at 4. The Government invokes the collective knowledge doctrine to impute the knowledge of Agent Ryan and others listening to the phone calls to the SPD detectives and other agents surveilling Defendant. *See* Dkt. # 367 at 8-9.

"Under the collective knowledge doctrine, [the court] must determine whether an investigatory stop, search, or arrest complied with the Fourth Amendment by 'look[ing] to the collective knowledge of all the officers involved in the criminal investigation although all of the information known to the law enforcement officers involved in the investigation is not communicated to the officer who actually [undertakes the challenged action].'" *Ramirez*, 473 F.3d at 1032. The doctrine applies in two situations. The first is "where law enforcement agents are working together in an investigation but have not explicitly communicated the facts each has independently learned." *Id.* at 1032. In this situation, there is "a limited requirement that there be a communication but not necessarily the conveyance of any actual information among officers." *Id.* The second occurs "where an officer . . . with direct personal knowledge of *all* the facts necessary to give rise to reasonable suspicion . . . directs or requests that another officer . . . conduct a stop, search or arrest." *Id.* at 1033 (original italics).

In the first situation, often "no single law enforcement officer knows all of the facts necessary to establish reasonable suspicion or probable cause, and thus aggregation of facts is

---

[2] Both parties apply the collective knowledge doctrine to the automobile exception's probable cause standard. *See* Dkt. # 352 at 4; Dkt. #367 at 8-9. Still, because both parties incorporate the analysis from their earlier briefing into their discussions on the search incident to arrest and reasonable suspicion, the Court applies the collective knowledge doctrine in considering both exceptions. *See* Dkt. # 352 at 5; Dkt. # 367 at 10; *see also United States v. Ramirez*, 473 F.3d 1026, 1037 (9th Cir. 2007) (holding "[w]here one officer knows facts constituting reasonable suspicion or probable cause (sufficient to justify action under an exception to the warrant requirement), and he communicates an appropriate order or request, another officer may conduct a warrantless stop, search, or arrest without violating the Fourth Amendment").

required." *Ramirez*, 473 F.3d at 1032. Courts have been willing to "aggregate the facts known to each of the officers involved," when there has been at least some communication between them. *Id*. The doctrine seeks to "distinguish[ ] officers functioning as a team from officers acting as independent actors who merely happen to be investigating the same subject." *Id*. (alteration in original) (quoting *United States v. Terry*, 400 F.3d 575, 581 (8th Cir. 2005)).

Here, both situations apply. Based on his knowledge of all the facts, Agent Ryan "believed the drugs would be located in [Defendant]'s vehicle" and "directed enforcement units to contact [Defendant] in furtherance of this investigation," therefor providing a direct order for the stop based on his own personal knowledge as the second situation envisions. Thus, the collective knowledge doctrine applies. Dkt. # 352-1 at 4; Dkt. # 367-1 at 7; Dkt. # 367-1 at 14.

Even if this was not a sufficiently clear directive to specifically search, the first situation also applies. The record shows the officers were working as a team to investigate and openly communicating, specifically about the alleged narcotics transaction and Defendant. *See* Dkt. # 367-1 at 9-23 (real-time texts between officers). This is supported by Defense's own reading of the record. *See* Dkt. # 352 at 3 ("The Government's declaration and operational text messages establish that officers were communicating"). The Government needs to show, as the Defense says, "proof that relevant information was actually communicated among the officers." Dkt. # 372 at 3. The Government need only show that the officers were working as a team rather than independent actors. *See United States v. Wondie*, No. CR18-315 RAJ, 2021 WL 5987097, at *4 (W.D. Wash. Dec. 17, 2021) (collecting cases). Because the record establishes that the officers were not independent actors, the collective knowledge doctrine applies. Thus, the collective knowledge of the officers may be considered in the reasonable suspicion and probable cause analyses.

B. Search Incident to Arrest

"Police may search a vehicle incident to a recent occupant's arrest only if . . . it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Arizona v. Gant*, 556 U.S. 332, 351 (2009). Under this exception, a search is "constitutional (1) if the arrestee is within reaching distance of the vehicle during the search, or (2) if the police have reason to believe that the vehicle contains 'evidence relevant to the crime of arrest.'" *Davis v. United States*, 564 U.S. 229, 235 (2011) (quoting *Gant*, 556 U.S. at 343).

Here, considering the collective knowledge of the officers, the officers had reason to believe the vehicle contained evidence relevant to the crimes of the arrest that followed immediately after the search. As previously described, officers heard conversations that a narcotics transactions was about to unfold with a third party in a Cadillac, witnessed Ceesay walk towards and enter a Cadillac with a bag all while on the phone, heard what sounded like a narcotics transaction between Ceesay and the third party in the Cadillac, observed Ceesay leave the Cadillac without the bag, heard Ceesay confirm with Means that the transaction had been successful, and then watched the unmoving vehicle until they conducted the search. *See* Dkt. ## 352-1, 367-1. This easily establishes reasonable suspicion that the vehicle contained evidence of a narcotics transaction.

And although the arrest followed the search, "[a] search incident to arrest need not be delayed until the arrest is effected. Rather, when an arrest follows 'quickly on the heels' of the search, it is not particularly important that the search preceded the arrest rather than vice versa. So long as an arrest that follows a search is supported by probable cause independent of the fruits of the search, the precise timing of the search is not critical." *United States v. Smith*, 389 F.3d 944, 951 (9th Cir. 2004) (citing *Rawlings v. Kentucky*, 448 U.S. 98, 111 (1980)); *see also United States v. MacLaughlin*, 170 F.3d 889, 892–93 (9th Cir. 1999) (considering whether "the arrest

and search are so separated in time or by intervening acts that the latter cannot be said to have been incident to the former").

The same facts already described also establish probable cause for Defendant's arrest that was independent of the fruits of the search. *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006) (holding probable cause requires a "'fair probability,' not certainty or even a preponderance of the evidence") (citing *Illinois v. Gates*, 462 U.S. 213, 246 (1983)); *see also Florida v. Harris*, 568 U.S. 237, 244 (2013) (describing probable cause as a "practical and common-sensical standard"). After listening to the alleged narcotics transaction, officers had probable cause to arrest Defendant. While officers waited for Ceesay to "get[] some distance away," they continued to observe the Cadillac and at no time saw Defendant leave. Dkt. # 367-1 at 6-7, 14. At approximately 6:49 p.m., officers contacted Defendant, then secured him and conducted the search. Dkt. # 367-1 at 6-7. While it is unclear exactly when the arrest occurred, by 7:43 p.m., an officer confirmed SPD would take custody of Defendant. Dkt. # 367-1 at 21. Because officers had probable cause to arrest Defendant and the arrest was sufficiently on the heels of the search, the search incident to arrest exception may be invoked. *See* Dkt. # 367-1 at 7, 21; Dkt. # 352-1 at 5; *see also United States v. Johnson*, 224 F. Supp. 3d 881, 888-90 (N.D. Cal. 2016) (finding where officer had probable cause to arrest before conducting the search the search incident to arrest exception applied), *aff'd*, 913 F.3d 793 (9th Cir. 2019), *cert. granted, judgment vacated on other grounds*, 589 U.S. 1031 (2019), and *aff'd*, 963 F.3d 847 (9th Cir. 2020), and *aff'd*, 979 F.3d 632 (9th Cir. 2020).

Defendant's position that the search of the hidden compartment under the back seat was unreasonable has no merit as applied to the search incident to arrest exception on these facts. *See* Dkt. # 352 at 5; *see also Gant*, 556 U.S. 332, 344 (2009) (holding in certain situations, including drug offenses where there is an evidentiary basis for the search, "the offense of arrest will supply

a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein"); *see also United States v. McCoy*, 398 F. Supp. 3d 617, 620, 623 (N.D. Cal. 2019) (finding, under the search incident to arrest exception, officer had probable cause to search a vehicle's trunk where officer observed defendant engage in what he believe to be a drug transaction), *aff'd*, 2021 WL 4739645 (9th Cir. Oct. 12, 2021); *United States v. Svarda*, 2021 WL 4951451, at *5 (N.D. Cal. Oct. 25, 2021) (same). As described above, where the officers heard what sounded like a narcotics transaction occur in the Cadillac and witnessed Ceesay bring a black bag into the Cadillac and leave without it, probable cause existed to search the vehicle. Thus, applying the search incident to arrest exception, no violation of Defendant's Fourth Amendment rights occurred.[3]

## IV

## CONCLUSION

For these reasons, the Court DENIES the motion.

Dated this 9th day of September, 2026.

John H. Chun
United States District Judge

[3] Because the search incident to arrest exception applies, the Court need not consider the automobile exception.